UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Conservation Law Foundation, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:17-cv-10580 |
| v. ) | |
| ) | ~~Proposed~~ Consent Decree |
| GP Aggregate Corp., ) | |
| Pond Road Stone, Inc., and ) | |
| PG Trust, ) | |
| ) | |
| Defendants. ) | |

WHEREAS, Plaintiff Conservation Law Foundation, Inc. ("CLF") filed this action on April 4, 2017, against GP Aggregate Corp. and Pond Road Stone, Inc. and on August 20, 2018 amended the action to include PG Trust (collectively "PG Trust, GP Aggregate and Pond Road Stone" or "Defendants"), alleging violations of the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act"), and seeking declaratory and injunctive relief, civil penalties, and attorney fees and costs; and

WHEREAS, CLF is a regional, nonprofit environmental organization; and

WHEREAS, PG Trust, GP Aggregate and Pond Road Stone own and operate a construction sand and gravel (exposed aggregate) and stone products facility located at 19R Pond Road, Gloucester, MA 01930 (the "Facility"); and

WHEREAS, CLF alleged that the Facility discharged stormwater and process wastewater associated with its industrial activity without a Clean Water Act discharge permit to waters of the United States; and

WHEREAS, CLF alleged in its complaint (the "Complaint") and in a letter (the "Notice Letter") dated April 4, 2017, sent to GP Aggregate Corp. and Pond Road Stone, Inc., that GP Aggregate Corp. and Pond Road Stone, Inc. violated Sections 301(a) and 402(p)(2)(B) of the Clean Water Act, 33 U.S.C. § 1311(a) and 1342(p)(2)(B); and

WHEREAS, PG Trust, GP Aggregate and Pond Road Stone have agreed to engage a qualified engineering consultant to undertake the preparations necessary to apply for a stormwater discharge permit for the Facility; and

WHEREAS, PG Trust, GP Aggregate and Pond Road Stone have agreed to develop and implement a Stormwater Pollution Prevention Plan and to file a Notice of Intent to seek coverage

1

under, and receive, a 2015 Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity for the Facility; and

WHEREAS, PG Trust, GP Aggregate and Pond Road Stone have agreed to prevent any discharges of process wastewater unless such discharges are covered under and in accordance with a Clean Water Act permit; and

WHEREAS, CLF and PG Trust, GP Aggregate and Pond Road Stone (collectively, "the Parties" or individually "Party") agree that resolution of this matter without further litigation is in the best interest of the Parties and the public, and that entry of this Decree is the most appropriate means of resolving this action.

NOW, THEREFORE, without the trial of any issue of fact or law, without the admission by PG Trust, GP Aggregate and Pond Road Stone of any of the facts or violations alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

I. JURISDICTION AND VENUE

1. Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question) and 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction). An actual, justiciable controversy exists between Plaintiff and Defendant. The requested relief is proper under 28 U.S.C. § 2201, 28 U.S.C. § 2202 and 33 U.S.C. § 1365(a).

2. Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because the alleged events giving rise to this action occurred at the Facility, located at 19R Pond Road in Gloucester, Massachusetts, which is located within this judicial district.

II. COMPLIANCE PROGRAM

3. Defendant shall not cause or allow process wastewater to discharge from the Facility, unless consistent with state and federal statutory and regulatory requirements and permits.

4. Defendant shall obtain and maintain coverage under the United States Environmental Protection Agency ("EPA") National Pollutant Discharge Elimination System ("NPDES") 2015 Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity ("MSGP") and shall comply with the MSGP at the Facility. The MSGP, as it may be updated from time to time, is incorporated into this Consent Decree by reference.

5. Within thirty (30) days after the date on which this Consent Decree is entered by the Court (the "Effective Date"), Defendant shall develop a stormwater pollution prevention plan ("SWPPP") in accordance with Parts 5, 8.E, and 8.J of the MSGP. Defendant shall implement the provisions of its SWPPP at the Facility. Development of the SWPPP shall include, at

minimum, the following steps:

> a) formation of a pollution prevention team of qualified personnel who will be responsible for ensuring compliance with the MSGP;
>
> b) identification of potential stormwater pollution sources at the Facility, and selection and installation of appropriate control measures that minimize the discharge of pollutants during storm events for each of these sources; and
>
> c) development of procedures for conducting required inspection and monitoring activities, as well as regular maintenance of control measures, at the Facility.

6. Defendant has retained a qualified engineering consultant to develop its SWPPP. Defendant shall incorporate the consultant's recommendations in its SWPPP.

7. Defendant shall provide a copy of its SWPPP to CLF for review and comment within thirty days of the Effective Date.

8. Defendant shall implement and maintain stormwater control measures, in accordance with Part 2.1 of the MSGP, to meet numeric and non-numeric effluent limits and benchmark levels.

9. Defendant shall implement and maintain stormwater control measures that include the following categories of site-specific best management practices ("BMPs") as described in the SWPPP, as may be amended from time to time:

> a. Good housekeeping practices;
>
> b. Minimizing exposure of potential pollutant sources to precipitation;
>
> c. Erosion and sediment control; and
>
> d. Management of runoff.

10. Defendant shall implement and maintain stormwater control measures at the Facility as described in the SWPPP, as may be amended from time to time, which include, but are not limited to:

> a. The site-specific BMPs listed in Part 8.E of the 2015 MSGP (or the analogous in later iterations of the MSGP); and
>
> b. The "BMPS for Potential Pollutant Sources at Glass, Clay, Cement, Concrete, and Gypsum Product Manufacturing Facilities," listed in Table 2 of the United Environmental Protection Agency's ("EPA") *Industrial Fact Sheet Series for Activities Covered by EPA's MSGP (Sector E: Glass, Clay, Cement, Concrete, and Gypsum Product Manufacturing Facilities)*, available at: https://www.epa.gov/sites/production/files/2015-10/documents/sector_e_glass.pdf

3

11. Wherever feasible, Defendant will design, install, and implement control measures that employ a low-impact ("LID") approach. LID is a natural-resource-based alternative approach to site design that incorporates a variety of structural and non-structural techniques, such as vegetated areas the collect, treat, and infiltrate stormwater and shallow drainage channels that slow runoff and filter it.

### III. MONITORING PROGRAM

12. Defendant shall comply with all applicable inspection, monitoring, and reporting requirements of the MSGP. This shall include but not be limited to in-house inspection of control structures and storage areas after rain events.

13. Defendant shall monitor and sample its stormwater runoff, including sheet flow pursuant to the MSGP and the *Industrial Stormwater Monitoring and Sampling Guide* (available at: https://www3.epa.gov/npdes/pubs/msgp_monitoring_guide.pdf) for pollutants identified in the MSGP for Sectors E (Total Suspended Solids, and Iron) and J (Total Suspended Solids and Nitrate plus Nitrite Nitrogen) commencing on the Effective Date. This monitoring must be performed pursuant to the requirements of the MSGP and include, at a minimum, the stormwater collection areas where runoff is generated, received, stored, treated, or disposed and that are exposed to either precipitation or stormwater runoff. Once Defendant has obtained coverage under the MSGP in the future as set forth in Paragraph 4 of this Decree, Defendant shall commence submitting quarterly tests to EPA.

14. During the life of the Decree, Defendant shall create and send Discharge Monitoring Reports to CLF. These Reports shall include Quarterly Discharge Monitoring Reports, which shall be sent to CLF on a quarterly basis, and an Annual Report which shall be sent to CLF on a yearly basis. Quarterly Discharge Monitoring Reports and the Annual Report shall be accompanied by the attached Compliance Questionnaire Coversheet. Per Section 6.1.7 of the MSGP, due dates are:

> Q1 (January-March): April 30
> Q2 (April-June): July 30
> Q3 (July-September): October 30
> Q4 (October-December): January 30
> Annual Report: January 30

15. Defendant may take additional samples of its stormwater discharges. If it does so, Defendant will send a copy of each such inspection and/or sampling result to CLF no later than ten (10) days after receipt.

16. During the first year after the Effective Date of this Decree, Defendant shall implement and/or maintain control measures at the Facility as necessary to meet the benchmark levels for MSGP Sectors E (Total Suspended Solids, and Iron) and J (Total Suspended Solids and Nitrate plus Nitrite Nitrogen). If, after the end of twelve (12) months from the Effective Date of this Decree, Defendant's quarterly monitoring result for any parameter exceed MSGP Part 8.E or 8.J benchmark levels, Defendant agrees to make stipulated additional environmental benefit payments as set forth in Paragraph 21 of this Decree.

17. During the life of the Decree, CLF, through representatives, may conduct one (1) site inspection every year at the Facility. The site inspection shall occur during normal business hours and upon 48-hours prior notice to Defendant. During the site inspection, CLF representatives may collect water and soil samples, take photos at the Facility, and monitor compliance with the MSGP and the Decree. Any such samples shall be split samples with one of the split samples remaining in the possession of Defendant.

18. During the life of the Decree, Defendant shall copy CLF on all documents related to stormwater quality or Clean Water Act compliance regarding the Facility submitted to the EPA or MA DEP, or any local government. Such documents shall be provided to CLF concurrently as they are sent to the agencies and/or local government.

## IV. SUPPLEMENTAL ENVIRONMENTAL PROJECT

19. Defendant shall make an environmental benefit payment to the Essex County Greenbelt Association totaling Twenty Thousand Dollars ($20,000), for the environmental protection and restoration of, or other environmental benefit to, the EPA-designated Charles Watershed (which encompasses the Massachusetts-designated North Coastal Watershed and includes Gloucester). Defendant shall notify CLF in writing concurrently each time an environmental benefit payment is made and provide a copy of each check. Payments under the paragraph shall be made according to the following schedule:
   (a) $7,000 within fourteen days of the Effective Date of this Decree;
   (b) $7,000 on or before August 30, 2019;
   (c) $6,000 on or before August 30, 2020.

20. For each missed deadline included in this Decree, excluding missed payment deadlines (discussed in Paragraph 24 below), Defendant shall make an additional environmental benefit payment to Essex County Greenbelt Association in the amount of Five Hundred Dollars ($500) for the environmental protection and restoration of, or other environmental benefit to, the Charles Watershed. Payment of each such additional amount shall be due fourteen (14) days following each missed deadline. Defendant shall notify CLF in writing concurrently each time a payment is made and provide a copy of each check. Pursuant to Paragraph 44, below, Defendant shall not be required to make such additional environmental benefit payment for missed deadlines arising from a Force Majeure event.

21. For each exceedance of an MSGP benchmark as described in Paragraph 16 of the Decree, above, Defendant will make an additional environmental benefit payment to the Essex County Greenbelt Association in the amount of Five Hundred Dollars ($500) for the environmental protection and restoration of, or other environmental benefit to, the Charles Watershed. Payment of each such additional amount shall be due fourteen (14) days following each exceedance.

22. None of the environmental benefit payments shall be disbursed to CLF.

## V. LIQUIDATED ATTORNEY FEES AND COSTS

23. Defendant shall pay to CLF a total sum of Twenty Thousand Dollars ($20,000) as

5

full and complete satisfaction of CLF's claim for attorney fees and costs incurred to date in this matter and for reasonable anticipated costs to be incurred in compliance monitoring and case management over the term of the Decree. Payments under the paragraph shall be made according to the following schedule:

       (a)    $8,000 within fourteen days of the Effective Date of this Decree;
       (b)    $6,000 on or before August 30, 2019;
       (c)    $6,000 on or before August 30, 2020.

24.    In the event that any payment owed by Defendant under the Decree is not made on or before the due date, Defendant shall be deemed in default of its obligations under this Decree. In addition to a continued requirement to make said payment, Defendant shall pay to CLF liquidated attorney fees of Three Hundred Dollars ($300) for every day that a payment is late.

## VI. EFFECT OF DECREE

25.    CLF covenants not to sue, releases and discharges PG Trust, GP Aggregate, and Pond Road Stone (and its/their subsidiaries, officers, directors, shareholders, representatives, assigns, agents, consultants, employees, officers, and attorneys, including those who have held positions in the past) from any and all claims, causes of action, or liability under Section 505 of the Clean Water Act, 33 U.S.C. § 1365, for damages, penalties, fines, injunctive relief, past and future attorney fees, past and future costs, or any other claim or relief (i) relating to, resulting from or alleging noncompliance with the Clean Water Act at the Facility occurring prior to the date the Court enters this Decree; (ii) for any violations that were alleged, or could have been alleged, in the Complaint; (iii) for the past conduct alleged to constitute violations in the CLF letter to Defendant dated April 4, 2017; and (iv) for past violations alleged in any CLF correspondence to Defendant dated prior to the date the Court enters this Decree concerning Defendant's facility and operations. Notwithstanding anything to the contrary contained herein, CLF retains all rights necessary to enforce the terms of this Decree, including by the filing of a lawsuit.

26.    PG Trust, GP Aggregate Corp. and Pond Road Stone, Inc. covenant not to sue, release and discharge CLF (and its subsidiaries, officers, directors, trustees, representatives, assigns, agents, consultants, employees, officers, and attorneys, including those who have held positions in the past), its representatives, assigns, agents, employees, officers, and attorneys, including those who have held positions in the past from any and all claims, liability, demands, penalties, costs, and causes of action of every nature which concern or are connected with CLF's investigation of and actions regarding PG Trust, GP Aggregate and Pond Road Stone.

27.    Neither this Decree, nor terms thereof, nor performance of the terms thereunder by Defendant shall constitute or be construed as an admission or acknowledgment by Defendant of the factual or legal assertions contained in this Decree or in CLF's Complaint, and Defendant retains the right to controvert in any subsequent proceedings, other than proceedings for the purpose of implementing or enforcing this Decree, the validity of the facts or determinations contained in this Decree or the Complaint. Neither this Decree, nor terms thereof, nor performance of the terms thereunder, shall constitute or be construed as an admission or acknowledgment by Defendant of any liability, or an admission of violation of any law, by

Defendant or by its officers, directors, employees, agents, successors, or assigns.

28. CLF does not, by consent to the Decree, warrant or aver in any manner that Defendant's compliance with this Decree will constitute or result in compliance with federal or state law or regulation. Nothing in this Decree shall be construed to affect or limit in any way the obligation of Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Decree.

## VII. REVIEW AND TERM OF DECREE

29. The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Consent Decree by the United States Attorney General and the EPA. Therefore, after the signing of this decree by the Parties, the Parties shall jointly inform the Court of the decree, and CLF shall serve copies of this Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5.

30. Upon the expiration of the forty-five-day review period provided by 33 U.S.C. § 1365(c)(3), or upon DOJ's completion of its review process, whichever is sooner, the Parties will jointly move the Court for entry of this Decree. This Decree shall take effect on the date it is entered by this Court and shall terminate upon the following: (i) four years have passed from the Effective Date; and (ii) completion of all payment obligations set forth in this Decree. If for any reason the Court should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Decree.

## VIII. MODIFICATION AND ENFORCEMENT OF DECREE

31. This Decree may be modified only upon written consent of the Parties and the approval of the Court.

32. This Court shall retain jurisdiction over this matter and allow this action to be reopened for the purpose of enabling the Parties to this Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Decree. If the Court does not agree to retain jurisdiction over this matter, then this Consent Decree will remain in full force and effect between the Parties, and either Party may institute a new action in the United States District Court for the District of Massachusetts concerning their respective rights and obligations under this Decree.

## IX. MISCELLANEOUS PROVISIONS

33. This Decree shall remain in effect if Defendant relocates the Facility to a different location, provided that the new location falls within the jurisdiction of the Clean Water Act.

34. Sections I, IV, V, VII, VIII, and IX of this Decree shall remain in effect if PG Trust, GP Aggregate Corp. and Pond Road Stone, Inc. cease to be the owner or operator(s) of the Facility, regardless of whether the Facility continues to operate or not.

35. All payments pursuant to this Decree shall be made in the form of a business

check. In the event that any business check submitted is returned due to insufficient funds, late payment penalties may apply and all subsequent payments shall be made in the form of a certified bank check.

36. **Entire Agreement.** This Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements and understandings, whether oral or written, among the Parties.

37. **Notices.** Any notice, demand, copies of documents and other communications required to be made under the provisions of this Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing and either (a) emailed, (b) personally served, (c) mailed by United States registered or certified mail, return receipt requested, postage prepaid, or (d) sent by a nationally recognized courier service (e.g., Federal Express) for next-day delivery, to be confirmed in writing by such courier. Notices shall be directed to the Parties at their respective addresses set forth below. Notices given in the foregoing manner shall be deemed given when (a) sent via email, (b) actually received or refused by the party to whom sent if delivered by courier, or (c) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt or at the expiration of three (3) business days after the date of mailing, whichever first occurs.

Notices for Plaintiff shall be sent to:

Caitlin Peale Sloan, Esq.
Conservation Law Foundation
62 Summer Street
Boston, MA 02110
cpeale@clf.org

Notices for Defendant shall be sent to:

Richard A. Nylen, Jr., Esq.
Lynch, DeSimone & Nylen, LLP
10 Post Office Square, Suite 970N
Boston, MA 02109
(617) 348-4500, ext. 231
rnylen@ldnllp.com

Each Party shall promptly notify the other Party of any change in the above-listed contact information by using the procedures set forth in this paragraph.

38. **Authorization.** Each person signing this Decree represents and warrants that s/he has been duly authorized to enter into this Decree by the Party on whose behalf it is indicated that the person is signing.

39. **Successors and Assigns.** This Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

8

40. <u>Interpretation</u>. The provisions contained herein shall not be construed in favor of or against either Party because that party or its counsel drafted this Decree, but shall be construed as if all Parties prepared this Decree, and any rules of construction to the contrary are hereby specifically waived. The terms of this Decree were negotiated at arm's length by the Parties hereto.

41. <u>Headings</u>. The section and paragraph headings contained in this Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Decree.

42. <u>Counterparts</u>. Facsimile, electronic and scanned signatures shall be deemed to be originals for all purposes. Copies of the original Agreement, whether transmitted by facsimile or other means, shall be effective. This Agreement may be signed in counterparts.

43. <u>Severability</u>. In the event that any of the provisions of this Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

44. <u>Force Majeure</u>. For purposes of this Decree, a "Force Majeure event" is defined as any event arising from causes beyond the control of Defendant, including its contractors and subcontractors, that delays or prevents the timely performance of any obligation under this Decree, except for obligations as provided in Paragraphs 19, 23, and 24 of this Decree, notwithstanding Defendant's best efforts to avoid the delay. The deadline for the responsibility to perform any action under this Decree may be extended for up to the number of days of nonperformance caused by the Force Majeure event, provided that Defendant complies with the notice requirements of this paragraph. Examples of events which may constitute Force Majeure events include severe weather events, natural disasters, and national, state or regional emergencies. Examples of events that are not Force Majeure events include, but are not limited to, normal inclement weather, unanticipated or increased costs or expenses of work, Defendant's financial difficulty in performing such work and acts or omissions attributable to Defendant's contractors or representatives.

If any event occurs which may delay or prevent the performance of any obligation under this Decree, caused by a Force Majeure event, Defendant shall notify CLF, at the address specified in Paragraph 37 above, within five (5) business days after Defendant first knows, or should know, that the event might cause a delay. This written notice to CLF shall include, without limitation: (i) an explanation of the causes of any actual or expected delay or noncompliance; (ii) the anticipated duration of delay; (iii) the measures taken and to be taken by Defendant to prevent or minimize the delay or nonperformance; (iv) a proposed schedule for the implementation of such measures; and (v) a statement as to whether in the opinion of Defendant the Facility can continue to operate in a manner which will not violate this Decree.

If CLF agrees that a delay or anticipated delay in performance is attributable to Force Majeure, the time for performance of the obligations under this Decree that are affected by the Force Majeure event shall be extended for the period of time reasonably necessary to allow performance of the obligation to the extent the delay was caused by a Force Majeure event.

9

**Conservation Law Foundation, Inc.**

By: _____ Date: _____

Sean Mahoney, Executive Vice President
Conservation Law Foundation
62 Summer Street
Boston, MA 02110

**GP Aggregate Corp., Pond Road Stone, Inc. and PG Trust**

By: *Paul M Butman Jr. Pres & Trustee* Date: 8/23/18

Paul M. Butman Jr., President and Trustee
GP Aggregate Corp.
Pond Road Stone, Inc.
PG Trust
19R Pond Road
Gloucester, MA 01930

ENTERED & DATED this 30 day of October 2018

*Judith Gail Dein*
Honorable Judith Gail Dein
United States Magistrate Judge

10

**Conservation Law Foundation, Inc.**

By: _____   Date: 8/21/18

Sean Mahoney, Executive Vice President
Conservation Law Foundation
62 Summer Street
Boston, MA  02110

**GP Aggregate Corp., Pond Road Stone, Inc. and PG Trust**

By: _____   Date: _____

Paul M. Butman Jr., President and Trustee
GP Aggregate Corp.
Pond Road Stone, Inc.
PG Trust
19R Pond Road
Gloucester, MA 01930

ENTERED & DATED this ___ day of _____, 2018

_____
Honorable Judith Gail Dein
United States Magistrate Judge